FILED BY ___ *PE*

*Mar 27, 2015*

STEVEN M. LARIMORE
CLERK U.S. DISTRICT CT.
S.D. OF FLA. **MIAMI**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

```
-----------------------------------------------------------x
                                            :
TUFAMERICA, INC.,                           :
                                            :
                 Plaintiff,                 :
                                            :
vs.                                         :
                                            :
ROBERT MARIN and                            :
BOBBY MARIN MUSIC PUBLISHING,               :
                                            :
                 Defendants.                :
                                            :
-----------------------------------------------------------x
```

Civil Action No. _____
**15-CV-60644-Dimitrouleas/Snow**
**COMPLAINT FOR**
**DAMAGES AND**
**DECLARATORY RELIEF**

**JURY TRIAL DEMANDED**

Plaintiff TufAmerica, Inc. ("Plaintiff"), by and through its undersigned attorneys,
Zarin & Associates P.C., for its complaint against Defendants Robert Marin ("Marin") and
Bobby Marin Music Publishing ("Marin Music") (collectively "Defendants"), alleges as
follows:

## NATURE OF THE ACTION

1.      This is an action for a declaration of copyright non-ownership and copyright
infringement brought under the U.S. Copyright Act, 17 U.S.C. §101 *et. seq.*

2.      Plaintiff is the exclusive licensee of the copyright in the musical composition
'I'll Be A Happy Man', which was written by Defendant Marin but which was owned, in full,
by Morton Craft ("Craft").

3.      Without Plaintiff's authorization, Defendant Marin entered an agreement with
third-parties to exploit the musical composition 'I'll Be A Happy Man'.

1

4.      Plaintiff seeks a declaration that Defendant Marin maintains no copyright ownership in the musical composition 'I'll Be A Happy Man' and all monetary damages which have flowed from Defendant Marin's exploitation of this composition.

## PARTIES

5.      Plaintiff TufAmerica, Inc. is a corporation organized and existing under the laws of the state of New York, with a principal place of business at 10 West 37th Street, Suite 601, New York, New York 10018.

6.      Upon information and belief, Defendant Robert Marin is a citizen of Florida, residing at 208 Three Islands Blvd., Apt. 212, Hallandale Beach, Florida 33009.

7.      Upon information and belief, Defendant Bobby Marin Music Publishing is a business entity the form of which is unknown, which is organized and existing under the laws of the state of Florida, and has a principal place of business at 208 Three Islands Blvd., Apt. 212, Hallandale Beach, Florida 33009.

8.      Upon information and belief, Defendant Marin is the owner of Defendant Bobby Marin Music Publishing.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over the claims in this action pursuant to 17 U.S.C. §101 *et. seq.* and 28 U.S.C. §§1331 and 1338.

10.     This Court has personal jurisdiction over Defendants because, upon information and belief: (i) Defendants are residents and citizens of Florida; (ii) Defendants transact business in Florida; (iii) Defendants have committed tortious acts in Florida which

have caused injury to Plaintiff; and/or (iv) Defendants regularly conduct or solicit business in Florida and/or derive revenue from the sale of goods or services in Florida.

11.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because, upon information and belief, Defendants are subject to personal jurisdiction in this district, a substantial part of the events which give rise to this action have occurred in this district, and Plaintiff has suffered harm from Defendants' conduct in this district.

## COMMON FACTS

### 'I'll Be A Happy Man' Creation And Exclusive License To TufAmerica

12.     In the 1960s, Morton Craft was a songwriter and music producer who produced music in a variety of genres, including but not limited to Latin music.

13.     At that time, Craft distributed the Latin music which he wrote and/or produced on a variety of record labels which he owned, including but not limited to the label 'Speed'.

14.     In the 1960s, Defendant Marin was a songwriter and musician who wrote and performed Latin songs.

15.     In or around 1966, Defendant Marin entered a work-for-hire agreement with Craft, personally and/or through a company owned by Craft, in which Marin agreed to write songs for Craft.  Pursuant to this agreement, Craft, or a company which Craft owned, owned the copyrights in any and all songs written by Marin.

16.     In or around 1967, Defendant Marin wrote and recorded the music for a song entitled 'I'll Be A Happy Man'.  This song had no lyrics, but rather was only instrumental.

3

17.     As Defendant Marin wrote and recorded the song 'I'll Be A Happy Man' pursuant to his agreement with Craft, the copyright in the musical composition and sound recording of the song was owned by Craft and/or a company owned by Craft.

18.     In or around 1968, Craft distributed a sound recording of the song 'I'll Be A Happy Man' on an album entitled 'Take A Trip Pussycat', which he released on his 'Speed' record label.  Attached as Exhibit A is a true and correct copy of the album 'Take a Trip Pussycat'.

19.     In 2004, Craft entered an agreement with Plaintiff in which he granted Plaintiff an exclusive license to administer and exploit a number of musical compositions and sound recordings owned by Craft, including but not limited to the musical composition 'I'll Be A Happy Man', which was originally released on Craft's record label 'Speed' as part of the album 'Take A Trip Pussycat'.

<u>Litigation Over 'I'll Be A Happy Man'</u>

20.     In or around 1968, Defendant Marin created a new recording of the musical composition 'I'll Be A Happy Man', which he called 'Happy Soul'.

21.     In or around 1969, another musician, Harold Beatty ("Beatty"), created a new recording of the musical composition 'I'll Be A Happy Man', which he called 'Hippy Skippy Moon Strut'.

22.     Claiming copyright ownership in the musical composition forming the basis of the recording 'Hippy Skippy Moon Strut', in or around 2006, The Clyde Otis Music Group, Inc. ("COMG") issued a license to Sony BMG Music Entertainment ("Sony BMG") for use of this composition in a song entitled 'Ain't No Other Man', which was performed by the

4

artist Christina Aguilera and distributed by Sony BMG.  Attached as Exhibit B is a true and correct copy of the musical composition license issue to Sony BMG by COMG.

23.     COMG also issued Sony BMG a license for use of the sound recording of the song 'Hippy Skippy Moon Strut'.

24.     After its release, in or around 2008, the song 'Ain't No Other Man' met with much critical and popular success, thereby generating substantial royalties for COMG.

25.     In or around 2011, Plaintiff brought an action against, *inter alia*, COMG, in United States District Court for the Southern District of New York, *TufAmerica, Inc. v. Codigo Music LLC*, Case No. 11-1434 ("New York Action"), for a declaration of copyright ownership of the musical composition underlying the sound recording 'Hippy Skippy Moon Strut', as well as for misappropriation and unjust enrichment to recover royalties unlawfully received by COMG pursuant to its licenses to Sony BMG.

26.     Through discovery in the New York Action, Plaintiff discovered that in 2007 Defendant Marin, who wrote the song 'I'll Be A Happy Man' pursuant to a work-for-hire agreement with Craft, had entered an agreement with a music publishing company, Emusica Publishing, LLC ("Emusica"), in which he granted Emusica the right to administer and exploit, *inter alia*, this composition.  Attached as Exhibit C is a true and correct copy of the agreement Marin entered with Emusica.

27.     Through the New York Action, Plaintiff also learned that: (1) in or around 2007, Codigo Music, LLC ("Codigo"), through a predecessor-in-interest, purchased Emusica's music assets, which purportedly included the musical composition 'I'll Be A Happy Man'; (2) in a lawsuit brought in 2007 by COMG against Emusica and Codigo, *The*

5

*Clyde Otis Music Group, Inc. v. Emusica Records, LLC*, United States District Court for the District of New Jersey, Case No. 07-3112 ("New Jersey Action"), Codigo brought counterclaims against COMG asserting, based upon the agreement Defendant Marin entered with Emusica, that Codigo owns the copyright in the musical composition 'I'll Be A Happy Man'; and (3) in settlement of the New Jersey Action, the parties to that action agreed that Defendant Marin is the owner of the copyright in the musical composition 'I'll Be A Happy Man'.

28.     Neither Defendant Marin nor Defendant Marin Music were parties to the New Jersey Action.

29.     Neither Defendant Marin nor Defendant Marin Music are parties to the New York Action.

30.     Upon information and belief, pursuant to his agreement with Emusica and the subsequent settlement agreement in the New Jersey Action, Defendant Marin has received substantial royalties from the exploitation of the musical composition 'I'll Be A Happy Man'.

31.     Upon information and belief, Defendant Marin Music has also received substantial royalties from the exploitation of the musical composition 'I'll Be A Happy Man'.

32.     As he wrote the musical composition 'I'll Be A Happy Man' as a work-for-hire, Defendant Marin had no authority to issue a license to Emusica or any third-party for use of this composition or to receive any royalties from the exploitation of the composition.

33.     By granting Emusica the right to administer and exploit the musical composition 'I'll Be A Happy Man' in 2007, Defendant Marin violated Plaintiff's exclusive

rights in this composition, which it received in 2004 from Craft, who was the owner of the copyright in this musical composition.

## COUNT I
### (Declaration of Copyright Non-Ownership
### Under 28 U.S.C. §2201)

34.    Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 33 as if fully set forth herein.

35.    In his agreement with Emusica, Defendant Marin asserted ownership of the copyright in the musical composition 'I'll Be A Happy Man'.

36.    As Defendant Marin wrote this song pursuant to a work-for-hire agreement with Craft and/or a company owned by Craft, Craft was the owner of the copyright in this musical composition.

37.    Plaintiff seeks a declaration that Defendants maintain no ownership rights in the musical composition 'I'll Be A Happy Man'.

38.    As Craft, the owner of the musical composition 'I'll Be A Happy Man', entered an agreement with Plaintiff in which Craft granted Plaintiff the exclusive right to administer and exploit this composition, Plaintiff has an economic interest in such a declaration.

## COUNT II
### (Copyright Infringement)

39.    Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 38 as if fully set forth herein.

40.     As the exclusive licensee and administrator of the musical composition 'I'll Be A Happy Man', Plaintiff maintains the right to authorize third-parties to exploit this composition.

41.     Plaintiff has never granted Defendants the right to exploit the musical composition 'I'll Be A Happy Man'.

42.     By entering an agreement with Emusica to exploit the composition 'I'll Be A Happy Man', Defendants made an unauthorized use of the copyright in this composition.

43.     As a direct and proximate result of Defendants foregoing conduct, Plaintiff has suffered damages in an amount to be proved at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment as follows:

1.  An order declaring that Defendants maintain no ownership interest in the copyright of the musical composition 'I'll Be A Happy Man';

2.  An order awarding Plaintiff all monetary damages, pursuant to 17 U.S.C. §504(b), which it has sustained as a consequence of Defendants' infringement of Plaintiff's rights, as the exclusive licensee of the musical composition 'I'll Be A Happy Man';

3.  An order awarding Plaintiff all statutory damages, pursuant to 17 U.S.C. §504(c), to which it is entitled as a consequence of Defendants' willful infringement of Plaintiff's rights, as the exclusive licensee of the musical composition 'I'll Be A Happy Man'; and

4.  An order awarding Plaintiff any such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable.


Dated: March 18, 2015

By: _____

Scott Zarin, Esq. (motion for admission *pro hac vice* to be filed)
ZARIN & ASSOCIATES P.C.
One Penn Plaza, Suite 4615
New York, NY 10119
Tel. No. (212)580-3131
scottzarin@copyrighttrademarkcounsel.com

Attorneys for Plaintiff
TufAmerica, Inc.

# Exhibit A



**SPEED**

**TAKE A TRIP PUSSYCAT**
**THE LATIN BLUES BAND**
featuring: LUIS AVILES

**SS 101**
(SS 1001)

**SIDE A**
**STEREO**

1. TAKE A TRIP (B. Marin)
   Peek-A Boo/ Slew Music (BMI)          4:55
2. PUSSYCAT (B. Marin)
   First Date/ Slew Music (BMI)          3:22
3. (I'LL BE A) HAPPY MAN (B. Marin)
   Peek-A Boo/ Slew Music (BMI)          3:34
4. LAY AN OZ ON ME BABY (M. Craft, B. Marin)
   First Date/ Slew Music (BMI)          3:30
5. HASTA CUANDO (A. Luis Pacheco, L. Aviles)
   Peek-A Boo/ Slew Music (BMI)          3:35

Prod. by: Morty Craft

SPEED RECORDS IS A DIVISION OF LATIN SHOWCASE PRODUCTIONS LIMITED

# Exhibit B



BERTELSMANN
BMG U.S. Label Group
550 Madison Ave. · 10ᵗʰ fl.
New York, NY 10022
Telephone: 212.833.6059
Fax: 212.833.6119

May 19, 2006

VIA EMAIL

Isidro Otis
Clyde Otis Music Group
23 Eagle St.
Chestnut Ridge, NY 10977

Re:    Sample use of the composition entitled "Hippy Skippy Moon Strut" (H. Beatty) in "Ain't No
       Other Man" as performed by Christina Aguilera

Dear Isidro:

Please allow this letter to confirm that with respect to the above referenced sample use, Clyde Otis Music
Group, Inc. ("Clyde Otis") has approved of RCA Music Group's ("RCA") request to use the composition
entitled "Hippy Skippy Moon Strut" (the "Original Composition") in connection with the release of the
composition entitled "Ain't No Other Man" (the "New Composition").

In exchange for the right to use the Original Composition in the New Composition throughout the world, in
perpetuity, in all media, Clyde Otis shall be entitled to its share of fifty percent (50%) of the worldwide
copyright of and to the New Composition. RCA will pay Clyde Otis a recoupable advance against its share
of mechanical royalties earned on USNRC net sales of the New Composition in the amount of Ten
Thousand Dollars ($10,000.00)  In addition, RCA's share of mechanical royalties payable with respect to
the New Composition will be calculated as of the initial release at the full statutory rate in the United
States.

Mechanical licenses should be forwarded to the attention of: Irek Lacki – BMG, 1540 Broadway, New
York, NY 10036, Phone: (212) 833-7556 / Fax: (212) 833-7218.

We will provide you with split information as soon as this becomes available. For you reference, the pre-
sample writers are Christina Aguilera, Chris Martin, Kara DioGuardi, and Charles Roane, published by
Xtina Music/Careers-BMG Music Publishing, Inc. (BMI), Gifted Pearl Music/Works Of Mart, Inc.
(ASCAP), K'Stuff Publishing administered in the U.S. and Canada by ArtHouse Entertainment (BMI)
administered outside the U.S. and Canada by EMI Music, Ltd., Tricia Sounds Music (ASCAP),
respectively.  If you have any questions or comments, please feel free to contact me at (212) 833-6059.

Best regards,

Jonathan Price
Licensing Specialist
Business Affairs

Samples/RCAMusicGroup/SampleIn/ChristinaAguilera/Pub/Ain'tNoOtherMan_HippySkippyMoonStrut_5.22.06.doc

# Exhibit C



### Exclusive Administration Agreement

AGREEMENT made and entered into as of the 16th day of November, 2007, by and between Bobby Marin d/b/a Bobby Marin Music Publishing (hereinafter referred to as "PUBLISHER"), domiciled at 10765 N.W. 50th Street, Apt. 202, Miami, FL, 33178 and, Emusica Publishing, LLC, individually and doing business as _____ (BMI) (hereinafter referred to as "COMPANY") with its offices at 5757 Blue Lagoon Drive, Suite 230, Miami, FL 33126.

WHEREAS, it is the intention of Publisher and Company that Company shall exclusively administer and exploit throughout the Territory (as defined below), on behalf of Publisher, the musical compositions (hereinafter for convenience collectively referred to as the "Compositions") set forth in Schedule "A" hereto.

For and in consideration of the promises and mutual covenants, representations, warranties, agreements and obligations set forth herein, and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the parties hereto hereby agree as follows:

1.      Publisher owns or controls the Compositions, including all the world-wide right, title and interest, including the copyrights, the right to copyright and the renewal rights, therein and thereto.

2.      The Compositions have been or shall be registered for copyright by Company in the name of Publisher in the office of the Register of Copyrights of the United States of America.

3.      Term.  The term of this Agreement shall commence as of the date hereof and continue until December 31, 2013; provided, however, that if, on the date the Term would otherwise expire, any portion of Advances and/or chargeable costs paid or incurred pursuant to this Agreement have not been recouped from royalties otherwise payable to Publisher hereunder, then the Term will be automatically extended until the date on which Company renders to Publisher a royalty statement hereunder that indicates that Company has recouped from royalties otherwise payable to Publisher hereunder any and all advances paid and chargeable costs incurred under this Agreement.

**CODIGO 000083**

4.   Option to Extend Term. Publisher hereby grants Company the exclusive option to extend the Term of this Agreement under equal terms as this Agreement.

5.   Administration. Publisher hereby appoints Company, during the Term, to be the sole and exclusive administrator of all rights in and to all musical compositions written, owned, controlled and/or acquired by Publisher, during the Term. In connection with Company's rights as administrator under this agreement, Company shall be entitled to enter into exclusive worldwide sub-publishing agreements in connection with the administration of Compositions at rates to be determined by Company in its sole discretion.

6.   Territory. The Territory within which Company shall have the exclusive right to exercise the rights granted to it hereunder shall be the Universe.

7.   Grant of Rights. During the Term, Company shall have the sole and exclusive right throughout the Territory to:

a.   License, cause others to license, the exploitation of the Compositions, including, without limitation, the right to license: (i) broadcast and other public performances, (ii) the manufacture, distribution and sale of phonograph records; (iii) the synchronization of the Compositions in connection with motion pictures, television programs, commercials, internet usage, any new media developed during the Term; (iv) the dramatization of the Compositions; and (v) the use of the Compositions in connection with merchandising activities.
b.   Administer and grant rights in the Compositions and the copyrights therein.
c.   Print, publish and sell printed editions of the Compositions.
d.   Collect all monies earned during and prior to the Term, including, without limitation, the "publisher's share" of all public performance royalties payable to Publisher by BMI or any other applicable performing rights organization.
e.   Make arrangements of, adapt, change, and translate the Compositions in any manner.

8.   Name and Likeness. Publisher hereby grants Company the right to use the names, likeness and biographical information concerning the Writer(s) and/or Composer(s) of the Compositions for the purpose of advertising, promotion, trade use and exploitation of the Compositions without payment of additional compensation to Publisher. This statement of exclusive rights is only in clarification and amplification of the rights of Company hereunder and not in limitation thereof.

9.   Advances: Twenty-Thousand Dollars ($20,000), payable as follows:

a.   Ten Thousand Dollars ($10,000.00), promptly following the full execution of this agreement and schedules.
b.   Ten Thousand Dollars ($10,000.00), within six months of the start of the agreement.



2

**CODIGO 000084**

10.   Royalties.  Provided that Company has fully recouped from monies otherwise payable to Publisher any and all Advances and other chargeable costs, Company shall pay to Publisher the following royalties with respect to the exploitation of the Compositions:

      a.  Public Performance Income. Eighty percent (80%) of Net Income derived form the publisher's share of public performance income.  If a society in any part of the Territory does not license any particular public performance use of a Composition, Company may license that use directly and all income received shall be deemed accounted hereunder.

      b.  Mechanical Income. Eighty percent (80%) of Net Income derived from the license of Compositions for use in phonograph records.

      c.  Synchronization Income. Eighty percent (80%) of Net Income derived from the license of the Compositions for use in commercials and sound synchronization in audiovisual works.

      d.  Print Income. Eighty percent (80%) of Net Income derived from the right to print, publisher or sell printed editions or other reproductions of the Compositions.

      e.  Other Income. Eighty percent (80%) of Net Income derived from any exploitation of the Compositions not specifically referred to hereinabove.

11.   Accounting.  (a) Company shall compute Publisher's royalties as of each June 30th and December 31st for the prior six months.  Company will send Publisher a statement covering those royalties and will pay Publisher any net royalties which are due after deducting unrecouped advances or other chargeable costs.  Company will not be required to send a royalty payment for any period in which the royalty payable to Publisher will be $25.00 or less (but a statement shall nonetheless be rendered); such royalties shall be held and paid along with the next statement requiring payment in excess of $25.00.  All royalty statements and all accounts rendered to Publisher shall be binding upon Publisher and not subject to objection for any reason whatsoever unless specific objection in writing setting forth the basis thereof, is given to Company within one (1) year from the date rendered.  Publisher shall be barred from instituting or maintaining any action, audit or proceeding of any kind or nature with respect to any statements rendered hereunder unless such action or proceeding is commenced within one (1) year after delivery of such written objection by Publisher to Company.

12.   Gross Income. Any and all revenue and sums from any source in the Territory derived from the exploitation of the Compositions, less: (i) foreign taxes; (ii) any fees charged by a sub-publisher; and (iii) any fees retained by performing rights or non-affiliated collection agents.



3

**CODIGO 000085**

13.    Net Income. Gross Income actually received by Company in the United States less reasonable third party costs actually incurred by Company in connection with the Compositions (including without limitation, costs of lead sheets, copyright fees, BMI affiliation fees, fees paid to or charged by a third-party collection agent for the license of the Compositions).

14.    Warranties.    Publisher hereby covenants, represents and warrants that:    (i) Publisher owns or controls, directly or indirectly, in whole or in part, throughout the world, and will continue to own the rights into the musical Compositions during the Term; (ii) Compositions are original and do not infringe upon the rights of any third party; (iii) Publisher has the right, authority, and capacity to enter into this Agreement and to grant Company all of the rights granted herein; (iv) there are no other agreement or commitments relating to any of the Compositions that will diminish, impair or delay any of Company's rights hereunder; and (v) Publisher will not exercise, nor appoint or authorize any third party to exercise any of the rights granted to Company hereunder.

15.    Indemnity. Publisher does hereby agree to indemnify, save and hold Company harmless in the event of any claim, demand, action, judgment or decree based upon a breach of the warranties and representations made by Publisher herein.

16.    Right of First Refusal. Publisher shall not, during the term of Company's rights hereunder for any Composition, sell, transfer, assign, or otherwise dispose of any interest in the copyright or control of such Composition without first offering to Company the right to buy or acquire such interest at the same bona fide price and pursuant to the same bona fide terms as may be offered to Publisher by any responsible and unrelated third party, which terms, may, however, only provide for payment of cash in lump sum or installments. Publisher shall give Company written notice of any such bona fide and acceptable offer. The notice shall set forth the name of the prospective purchaser, the price, and all other terms of such offer. Company shall have thirty (30) days after receipt of such notice in which to notify Publisher whether or not it desires to acquire such interest at the terms set forth in the notice. If Company fails to give Publisher written notice within the thirty (30) day period that it is exercising its option to buy or acquire such interest, Publisher shall have the right to accept the bona fide offer by the prospective purchaser, but only as set forth in Publisher's notice to Company, provided however, that if Publisher does not accept such bona fide offer from such prospective purchaser within sixty (60) days after expiration of said thirty (30) day period, the procedure set forth in this clause shall again be followed by Publisher before Publisher may   dispose   of   such   interest   in   the   copyright   of   such   Composition



4

**CODIGO 000086**

17.   Actions.  Any legal action brought by the Company against any alleged infringer of the Compositions shall be initiated and prosecuted at its sole expense, and of any recovery made by Company as a result thereof, after reduction of litigation expenses, a sum equal to sixty percent (60%) thereof shall be paid to Publisher.  If a claim is presented against Company alleging that Compositions are an infringement upon some other composition, and because thereof Company is jeopardized, it shall thereupon serve written notice upon Publisher containing the full details of such claim, and thereafter, until the claim has been adjudicated or settled, Company may withhold such liability, including all costs and attorney's fees, out of any monies coming due Publisher hereunder, and pay such sums in escrow to any bank of trust company, to be held pending the outcome of such claim; provided, however, if no suit be filed within twelve (12) months after written notice to Publisher by Company of the adverse claim, said bank or trust company shall release and pay to Publisher all sums of money held in escrow, plus any interest which may have been earned thereupon, but less reasonable counsel fees incurred by Company in dismissing the claim.  Such payment shall be without prejudice to the rights of Company in the event of a subsequent adverse adjudication.

18.   Power of Attorney.  Publisher does hereby irrevocably empower and appoint Company, or any of its officers, Publisher's true and lawful attorney (with full power of Substitution and delegation) in Publisher's name, and in Publisher's place and stead, or in Company's name, to take and do such action, and to make, sign, execute, acknowledge, deliver, and record any and all instruments or documents which Company, from time to time, may deem desirable or necessary to vest in Company, its successors, assigns and licensees, any of the rights granted by Publisher hereunder, including, without limitation, such instruments or documents required to secure to Company copyright registration and protection for the Compositions for the full term of this Agreement and for any renewals or extensions thereof.

19.   Further Cooperation.  The Publisher and Company shall execute any further documents including, without limitation, assignments of copyrights, letters of direction and do all acts necessary to fully effectuate the terms and provisions of this Agreement.

20.   Miscellaneous.  This Agreement shall construed and enforced in accordance with laws of the State of Florida without regard to conflict of law principals.  Venue for any action brought under this agreement shall be brought in the courts in Miami-Dade County, Florida.  In any dispute arising under this Agreement the prevailing party shall be entitled to an award of attorney's fees and costs.  In the event any provision of this Agreement shall be illegal or unenforceable, or shall become illegal or unenforceable, then, in any such event, the same shall not affect the validity of the remaining portions and provisions hereof.  The waiver by either party of any breach of the Agreement shall not in any way be construed as a waiver by that party of any subsequent breach, whether similar or not, of this Agreement by Publisher.



5

**CODIGO 000087**

21.    Counterpart and Facsimile. This Agreement may be executed in counterpart, and each of which shall be deemed an original, but all of which together shall constitute one and the same agreement. Facsimile transmissions and other copies of executed documents shall serve the same purpose as originals in connection with the terms of this Agreement.

22.    Entire Agreement: This Agreement sets forth the entire understanding and agreement of the parties hereto and this Agreement may not be altered, modified, canceled or terminated in any way except upon the agreement of the parties hereto in writing.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first written above.

EMUSICA PUBLISHING, LLC
d/b/a Fania Music (BMI)

_____
Authorized Representative

ACCEPTED AND AGREED:

BOBBY MARIN d/b/a BOBBY MARIN MUSIC PUBLISHING

_____
Tax ID #: 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

You declare that you have read and understand the contents of this agreement, that it was executed voluntarily, and that you have had the opportunity to seek independent counsel in connection therewith.

6

CODIGO 000088

SCHEDULE "A" COMPOSITIONS

BOBBY MARIN PUBLISHING

| | | |
|---|---|---|
| AIN'T NO OTHER MAN | TBD | |
| CLICKETY CLACK | 100% | |
| ETERNALLY | 100% | |
| FUNKY GUAJIRA | 100% | |
| HELEN | 100% | |
| HEY MAMA | 100% | |
| HAPPY SOUL (WITH A HOOK) | 50% | DAVE CORTEZ |
| HIPPY SKIPPY MOON STRUT | | HAROLD BEATTY |
| I DON T KNOW | 100% | |
| (I'LL BE A) HAPPY MAN | 100% | |
| IT'S NOT WHAT YOU SAY (IT S WHAT YOU DO ) | 100% | |
| LAY AN OZ ON ME BABY | 100% | |
| LOST IN THE JUNGLE | 100% | |
| MOMENT DIVINE THE | 100% | |
| (MY) LAND OF LOVE  (samples: LAY AN OZ ON ME BABY) | 50% | E. JAKABECK |
| MY LOVE IS TRUE | 100% | |
| NEATH THE SUMMER SUN | 100% | |
| NEW BREED | 100% | |
| PLACE TO BE | 100% | |
| PUSSYCAT | | |
| SLEEP TIGHT | 100% | |
| TAKE A RIDE | | |
| THINKING OF YOU | | |
| TAKE A TRIP | 100% | |
| THE BODGIE MAN | 50% | Louie Ramirez |
| THIS IS WHERE IT S AT | | |
| WHAT CAN I DO | | |
| WRONG NUMBER | | |
| YOU GOTTA TURN ME ON | | |
| YOU TURNED YOUR BACK ON ME | | |

7

CODIGO 000089